494 So.2d 237 (1986)
Joma Lea ANDERSON, Appellant/Cross Appellee,
v.
Mark Eugene ANDERSON, Appellee/Cross Appellant.
No. 4-86-0674.
District Court of Appeal of Florida, Fourth District.
August 27, 1986.
Rehearing Denied October 9, 1986.
Richard D. Kibbey of Law Offices of Richard D. Kibbey, Stuart, for appellant/cross appellee.
Osborne Walker O'Quinn, Fort Pierce, for appellee/cross appellant.
GLICKSTEIN, Judge.
This case is a perfect example of why the legislature in the closing hours of its session in June 1986 adopted enlightened legislation by the creation of section 61.183, Florida Statutes (1986), which provides:
61.183 Mediation of certain contested issues. 
(1) In any proceeding in which the issues of custody, primary residence, or visitation of a child are contested, the court may refer the parties to mediation. Mediation services may be provided by the court or by any court-approved mediator.
(2) If an agreement is reached by the parties on the contested issues, a consent order incorporating the agreement shall be prepared by the mediator and submitted to the parties and their attorneys for review. Upon approval by the parties, the consent order shall be reviewed by the court and, if approved, entered. Thereafter, the consent order may be enforced in the same manner as any other court order.
(3) Any information from the files, reports, case summaries, mediator's notes, or other communications or materials, oral or written, relating to a mediation proceeding pursuant to this section, obtained by any person performing mediation duties, is privileged and confidential and may not be disclosed without the written consent of all parties to the proceeding. Any research or evaluation effort directed at assessing program activities or performance must protect the confidentiality of such information. Each party to a mediation proceeding has a privilege during and after the proceeding to refuse to disclose and to prevent another from disclosing communications made during the proceeding, whether or not the contested issues are successfully resolved. This subsection shall not be construed to prevent or inhibit the discovery or admissibility of any information that is otherwise subject to discovery or that is admissible under applicable law or rules of court, except that *238 any conduct or statements made during a mediation proceeding or in negotiations concerning the proceeding are inadmissible in any judicial proceeding.
Hopefully, now every circuit will put in place what Dade County has already been doing by providing for the mediation of matters which involve children. There, twenty-five of the thirty-one judges in that court's General Jurisdiction (Civil) Division, by administrative memorandum, require mediation in all dissolution actions where the issue of primary residential parent determination or parental contact of the non-residential parent is to be resolved. Statistical data from that court shows that for the period of January to April, 1986, of the 1,276 mandated referrals to the Family Mediation Unit, 1,116 reached agreement by the unit or through the parties' counsel and submitted to the unit, which translates to an eighty-six percent settlement rate at an early stage in the proceeding.
Here, two nice people have gone through the wrenching adversarial process over the primary physical residence of their two small children, now five and eight. The wife has lost, because the husband proved that he was more emotionally stable than the wife, whose difficulties have been exacerbated by the fight over the children in the system. Hopefully, the above statute will be considered as an alternative to an adversary resolution of these parties' post-dissolution controversies. There is, however, competent evidence upon which to place these children with the husband. Thus the wife must leave the marital home and the children, as we affirm the trial court's decision with the hope that the children will be sheltered, as much as possible, by both parties from the breakup and the adversarial decision as to the parent with whom they are presently to reside.
The wife is thirty-nine and has been looking after herself economically to some extent since she was fifteen, even providing support for the family during the husband's last year of college. The trial judge awarded her rehabilitative alimony of $350 per month, plus a car payment of $211 per month and set the period of her support for eighteen months. It is clear that the wife's testimony under questioning by her counsel and by the trial judge as to her future economic contributions to the family was based on the assumption that the children would be with her in the marital home. Her answers referred to her continuing to raise the children while working in some fashion. All of the trial judge's questions reveal that this woman's economic future was fraught with uncertainty and speculation. Even her counsel advised the trial judge that their evidence of need was based on her remaining in the marital home with the children, the husband having moved out during the present fight. The wife's entire theory of working was to contribute to her and her children's income, not to be solely responsible for her own. Under such speculative and uncertain evidence before us in this case, it was error to award such a low figure and to do so for a temporary period of time.
This case is substantially different from Hughes v. Hughes, 452 So.2d 1030 (Fla. 4th DCA 1984), where this court approved rehabilitative alimony only because there was competent evidence that the wife would have no difficulty in immediately obtaining employment as a nurse. We therefore reverse the award of rehabilitative alimony and remand with direction to consider additional evidence upon the question of the need for either rehabilitative or permanent alimony and the amount thereof.
This case points out the wisdom of first determining the issues involving children, hopefully by mediation, and if not, then by the adversary process. Following that decision, the parties can best proceed to achieve an informed decision as to their individual economic welfare.
DOWNEY, J., and WETHERINGTON, GERALD T., Associate Judge, concur.